Filed 5/29/26  Global Tel Link Corp. v. Dept. of Corrections and Rehabilitation CA3
Opinion after vacating prior opinion

<u>NOT TO BE PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| GLOBAL TEL*LINK CORPORATION,<br>        Plaintiff and Appellant,<br><br>        v.<br><br>DEPARTMENT OF CORRECTIONS AND<br>REHABILITATION et al.,<br>        Defendants and Respondents;<br><br>SECURUS TECHNOLOGIES, LLC,<br>        Real Party in Interest and Respondent. | C103843<br><br>(Super. Ct. No. 25WM000052) |

Respondents Department of Corrections and Rehabilitation (Corrections) and Department of Technology (Department of Technology) (together, the State) awarded a $189 million technology contract to respondent and real party in interest Securus Technologies, LLC (Securus) to provide telecommunications equipment and services to incarcerated persons.  Appellant Global Tel*Link Corporation (Global), doing business as ViaPath Technologies (ViaPath), filed a petition for writ of mandate and sought a preliminary injunction compelling the State to set aside the award.  The trial court denied the preliminary injunction.

1

ViaPath appeals from the preliminary injunction order.  ViaPath argues the trial court failed to appreciate the differences between bidder responsibility and bid responsiveness in the bid-protest context and consequently applied the wrong standard of judicial scrutiny to the award.  ViaPath also argues the trial court erroneously excluded extra-record evidence showing Securus was unable to satisfy the requirements of the solicitation for bids, and abused its discretion in finding ViaPath was unlikely to prevail on the merits of various other claims that the award to Securus was illegal or ill-advised.  ViaPath also argues the trial court abused its discretion in assessing the balance of harms.  Finding no merit in any of these arguments, we will affirm.

## I.  BACKGROUND

Incarcerated persons in California have traditionally communicated with the outside world using conventional telephone equipment (e.g., wall-mounted phones).  More recently, Corrections has started offering more advanced forms of communications and services, such as email and inbound video clips and photos downloadable to a tablet.  This case marks the latest chapter in the State's years-long effort to provide such services through competitive bidding.

*A.      The Previous Request for Proposals and Ensuing Litigation*

The Department of Technology issued a request for proposals for a contract to provide telecommunications equipment and services to incarcerated persons in 2020.  Global and Securus submitted bids and participated in a negotiation process pursuant to Public Contract Code section 6611.[1]  That process ended with an award to Global.

---

[1] Undesignated statutory references are to the Public Contract Code.

  Section 6611 authorizes the Department of General Services and the Department of Technology to use a negotiation process when contracting for information technology and telecommunications goods and services, provided certain conditions are met.  It is undisputed those conditions were met here.

Securus challenged the award by petition for writ of mandate. The trial court granted the petition and ordered the State to set aside the contract. We affirmed. (*Securus Technologies, LLC v. Department of Technology* (Mar. 20, 2023, C095097) [nonpub. opn.].) Around the same time, Corrections entered into an interim, noncompetitively bid contract with ViaPath to continue to provide existing services for the communications equipment (the NCB contract). The NCB contract expired in June 2025. It was subsequently extended through December 2025 (or so ViaPath says in its brief).

B.      *The Present Request for Proposals*

The State issued the present request for proposals in July 2024 (the RFP). The RFP was again issued pursuant to section 6611, and contemplated a contract with an initial term of six years, which the State could extend for as many as four additional years in the exercise of its discretion.

The RFP established a multi-step process for collecting and evaluating bids. First, bidders would submit proposals describing the products and services to be provided, identifying the costs associated with those products and services, and affirming their ability to satisfy certain mandatory administrative requirements. This appeal focuses on two such requirements—the bond letter and productive use requirements—which we will discuss momentarily.

Second, proposals would be evaluated for compliance with the RFP. During the evaluation process, bidders might be asked to clarify aspects of their proposals, or given an opportunity to resubmit non-compliant or non-responsive responses. Final proposals would then be scored.

Third, the State would invite up to three of the highest scoring bidders to negotiate pursuant to section 6611. As described in the RFP, "negotiations are exchanges between the State and the Bidder, which are undertaken with the intent of allowing the Bidder to revise their Proposal only in areas determined by the State during the negotiation

3

process." Significantly, the scope and extent of such exchanges are described as "matter[s] of the State's judgment."

Fourth, the State would have the option to request that bidders make best and final offer submissions clarifying any negotiated items or deviations from their proposals. The State would evaluate such submissions "based on topics negotiated and obtaining the value effective solution for the State." The contract would be awarded to the highest scoring best and final offer proposal.

The bidding period for the RFP closed on October 28, 2024. Two bidders submitted timely proposals: ViaPath and Securus. The State requested clarifications of various aspects of the proposals from both bidders. The State then invited ViaPath and Securus to separately participate in confidential negotiations. Following negotiations, the State asked ViaPath and Securus to submit their best and final offers to "clarify and document understandings reached during negotiations."

ViaPath and Securus each submitted best and final offers, which were evaluated and given a final score. ViaPath's best and final offer received a final score of 822.99. Securus's best and final offer received a final score of 934.20. The State subsequently notified ViaPath that it intended to award the contract to Securus. ViaPath commenced the instant action soon thereafter.

C.      *The Petition and Motion for Preliminary Injunction*

ViaPath filed a verified petition for a peremptory writ of mandate, injunctive relief, and declaratory judgment against Securus and the State in April 2025. The petition generally alleged the State should have disqualified Securus from the procurement "as neither responsible nor responsive."

A " 'responsible bidder' " is defined by statute as "a bidder who has demonstrated the attribute of trustworthiness, as well as quality, fitness, capacity, and experience to satisfactorily perform the public works contract." (§ 1103.) The petition alleged Securus was not a responsible bidder because it was "was teetering on the brink of bankruptcy."

4

The petition further alleged, apparently by way of illustration, that Securus was unable to comply with the RFP's bond letter requirement due to its financial distress.

Section 3.18 of the RFP provides as follows: "The Letter of Bondability shall be from a California admitted surety insurer which states the surety unconditionally offers to guarantee to the extent of $25,000,000 the bidder's performance in all respects of the terms and conditions and provisions of the agreement, and that within 21 calendar days of contract award, the surety will execute the Performance Bond requirement." ViaPath focuses primarily on the requirement that the bond letter "unconditionally" offer to guarantee the bidder's performance.

The petition alleged Securus attempted to satisfy the bond letter requirement with an initial letter from Nationwide Mutual Insurance Company (Nationwide) to the Department of Technology dated October 23, 2024 (the initial letter). The initial letter, which was attached as an exhibit to the petition, states: Nationwide is "currently considering providing the required Performance and Payment Bonds." The letter goes on to say that Nationwide's issuance of a bond would be subject to its "usual and customary underwriting standards and risk selection criteria, including, but not limited to, satisfactory contract terms and provisions, satisfactory bond forms, our receipt of and satisfaction with current underwriting information from [Securus's parent company], evidence of adequate owner financing, and an appropriate request to provide final bonds." The petition alleged the State deemed the initial letter insufficiently unconditional and "went outside the prescribed RFP process" by giving Securus an opportunity to submit another letter.

The petition alleged Securus submitted a revised letter to the Department of Technology on November 27, 2024 (the revised letter). The revised letter, which was also attached, again states Nationwide was "currently considering providing the required Performance and Payment Bonds." The revised letter goes on to say: "Nationwide agrees to provide a performance bond in the amount of $25 million within 21 days of the

5

contract award to the California Department of Corrections and Rehabilitation related to RFP C5611826 [the instant RFP] using the annual renewable bond form accepted in RFP C5611826 Question and Answer (Q&A) Set #2 [the question and answer chart], subject to agreed upon underwriting conditions being met."[2] The petition alleged the revised letter was still conditional and still failed to comply with section 3.18 of the RFP. The petition further alleged the "failure to submit a sufficient bond letter by the RFP deadline [was] a material deviation from the RFP's terms," which meant Securus "was not a responsible bidder at the deadline as required."

Shifting gears, the petition next alleged that Securus should have been disqualified for failing to submit a responsive bid. "A bid is responsive if it promises to do what the bidding instructions require." (*MCM Construction, Inc. v. City and County of San Francisco* (1998) 66 Cal.App.4th 359, 368.) The petition alleged Securus's bid was not responsive because it failed to comply with the RFP's productive use requirement.

Section 3.20 of the RFP required that proposed solutions "include only equipment and off-the-shelf software that is currently supported by its manufacturer" for certain specified timeframes, with the length of time depending on the type of technology. These productive use requirements were intended to "protect the State from being an experimentalist for new equipment and software having no record of proven consistent performance." To that end, section 3.20 of the RFP specified: "The State will only accept proven technology products."

Securus proposed to use a correctional grade tablet known as the "EVOTAB." The petition alleged the proposal was nonresponsive, because the EVOTAB was not a proven product within the meaning of section 3.20 of the RFP. The petition attached a press release dated January 9, 2025 (the press release), in which Securus announced

---

[2] We will say more about the question and answer chart in a moment.

"promising results from its first customer pilot programs" for the EVOTAB tablet, which were said to have run from "Fall 2024 through March 2025 with small and large departments of corrections and county customers." The petition alleged the State was required to disqualify Securus, as the press release established that the EVOTAB tablet was not a proven product within the meaning of section 3.20 of the RFP, and the proposal was therefore non-responsive.

The petition was followed by an ex parte application for a temporary restraining order and request for an order to show cause regarding issuance of a preliminary injunction. The application argued ViaPath was likely to succeed on the merits for two reasons relevant to the instant appeal. First, the application argued ViaPath was likely to succeed on the merits because "Securus is not a responsible offeror because it failed to meet the mandatory Letter of Bondability … requirements." Second, the application argued ViaPath was likely to succeed on the merits because "Securus's bid is nonresponsive because its untested technology does not meet mandatory productive use requirements." The trial court denied the application and set the matter for a hearing on the preliminary injunction.

ViaPath filed a supplemental memorandum in support of the preliminary injunction motion, incorporating the arguments set forth in the previously-filed application. The State and Securus each opposed the motion. As relevant here, the State argued ViaPath was unlikely to succeed on the merits because Securus was a responsible bidder and satisfied the bond letter requirement's "primary criteria," and the RFP only required that bidders self-certify their compliance with the productive use requirement, which Securus had done. The State also argued ViaPath failed to show the balance of harms favored granting the preliminary injunction, and objected to the press release on the ground that it was not part of the record during the agency proceedings, and judicial review in a mandamus action under Code of Civil Procedure section 1085 is limited to " 'an examination of the proceedings before the agency to determine whether its findings

7

and actions are supported by substantial evidence.' " (Quoting *Cypress Security, LLC v. City and County of San Francisco* (2010) 184 Cal.App.4th 1003, 1010 (*Cypress Security*).)

The State's opposition was supported by the declaration of Amy Snow, Branch Chief in the Office of Statewide Technology Procurement for the Department of Technology and procurement officer for the RFP. Snow averred that Securus and ViaPath both failed in their initial attempts to comply with the RFP's bond letter requirement. She attached a copy of ViaPath's first letter, which failed to specify that the performance bond would be provided within 21 days of the contract award, as required by section 3.18 of the RFP. Snow further averred that both bidders were sent requests for clarification and both submitted revised letters. According to Snow, the Department of Technology ultimately determined both bidders' revised letters were compliant "because they included the primary criteria required in section 3.18 of the RFP: the surety's guarantee of a bond of $25,000,000 to be executed within 21 days of contract award, and a Letter of Bondability valid for 12 months from the date of issuance." As for the productive use requirement, Snow explained the RFP only required that bidders certify that they met the requirement, which Securus had done. In any case, Snow said, she "did not discover any information during the bidding process which indicated that the EVOTAB tablet offered by Securus was new and untested technology."

The State's opposition was also supported by the declaration of Stephanie Jones, Acting Chief of the Incarcerated Population and Community Solutions Section for Corrections. According to Jones, Corrections and Securus were working on a transition plan from ViaPath to Securus, and delaying implementation of the plan would interfere with Corrections' ability to provide critical services to incarcerated persons, thereby diminishing the safety and security of statewide correctional facilities. Jones also explained that Corrections entered into the NCB contract following the issuance of our opinion in the previous appeal, and anticipated extending the contract by at least six

8

months "to avoid the interruption of existing communication services already provided to incarcerated individuals." As such, Jones predicted, ViaPath would "still be providing services and receiving compensation for these services while the Court adjudicates the validity of ViaPath's [p]etition."

Securus also opposed the motion, echoing many of the same arguments as the State. Securus additionally argued ViaPath failed to show the balance of harms favored granting the preliminary injunction because, even assuming the trial court found ViaPath was likely to prevail on the merits, the State would only be obliged to rebid the contract, and ViaPath was unlikely to submit the superior bid, given the scores on the most recent bids.

Securus submitted a copy of the question and answer chart in connection with its opposition. The question and answer chart appears to document the State's responses to questions concerning the RFP. One such question addresses the bond letter requirement. The question, which appears to have originated from an unidentified source, asserts a surety company would be unlikely to agree to a six-year bond and asks whether the State would accept an annually renewable bond. The State responded that an annually-renewable bond would be acceptable provided the bond was in effect for a six-year base term plus any extensions.

Securus also submitted a declaration from Alex Dougherty, Chief Operating Officer of its parent company, Aventiv Technologies, LLC. Dougherty averred Securus had provided a $25 million performance bond to Corrections. Dougherty further averred Securus had already devoted significant resources towards the contract, including more than 5,600 hours of employee time and more than $45 million in landed costs, some $14.6 million of which had already been paid.

ViaPath filed a reply brief, arguing explicitly for the first time that Securus's failure to comply with the RFP's bond letter requirement meant that it was not a *responsive* bidder. This marked a change from the petition, application, and

9

supplemental memorandum, all of which argued the alleged failure to comply with the bond letter requirement meant Securus was not a *responsible* bidder. As for the State's objections to the press release, ViaPath responded only that it was "publicly available to the Agency during the procurement process."

D.     *The Trial Court's Tentative Ruling and Order*

The trial court issued a tentative ruling in anticipation of the hearing on the motion. As relevant here, the trial court tentatively sustained the State's objections to the press release, relying on *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 578 (*Western States*) for the proposition that "extra-record evidence is not permitted in a traditional mandate action except in very limited circumstances" and " 'can never be admitted merely to contradict the evidence the administrative agency relied on in making a quasi-legislative decision or to raise a question regarding the wisdom of that decision.' " As we shall discuss, ViaPath argues the trial court erred in excluding the press release.

Having defined the record, the trial court next considered the likelihood that ViaPath would prevail on the merits. The trial court began with ViaPath's argument that Securus was not a responsible bidder. The trial court tentatively concluded substantial evidence supported the State's determination that Securus satisfied the bond letter requirement, and therefore, ViaPath was unlikely to succeed on the merits of its claim that Securus should have been disqualified for not being a responsible bidder. As we shall discuss, ViaPath argues the trial court misunderstood the concepts of a responsive bid and responsible bidder, and consequently applied the wrong standard of judicial scrutiny to the bond letter issue.

The trial court next considered ViaPath's argument that Securus failed to comply with the productive use requirement. The trial court explained the argument was "based entirely on extra-record material," as to which the State's objections had been sustained.

10

Accordingly, the trial court tentatively concluded ViaPath had not met its burden to present evidence showing a likelihood of success on the merits.

With respect to the balance of harms, the trial court observed that, even assuming ViaPath was successful in obtaining an order setting aside the contract, "such an order would not automatically award the contract to [ViaPath.]" The trial court also observed that the State anticipated extending the NCB contract, such that the existing transition plan effectively maintained the status quo so far as the provision of services to incarcerated persons was concerned. Accordingly, the trial court tentatively concluded the evidence did not justify a preliminary injunction.

The trial court conducted a hearing on the motion in May 2025. At the hearing, ViaPath's counsel focused on the bond letter requirement, arguing *Konica Business Machines U.S.A., Inc. v. Regents of University of California* (1988) 206 Cal.App.3d 449 (*Konica Business Machines*) required the State to reject Securus's bid as nonresponsive upon reviewing its proposal, and seeing the initial letter was not unconditional. In ViaPath's view, the State acted outside the scope of its authority by allowing Securus to submit the revised letter. Furthermore, ViaPath continued, even assuming the State could consider another bond letter from Securus, the revised letter was also conditional, and thus failed to comply with the RFP. As such, ViaPath argued that *Konica Business Machines* required the State to reject Securus's bid.

Following the hearing on the motion, the trial court added several paragraphs to the tentative ruling to address ViaPath's newly articulated arguments. The trial court rejected ViaPath's argument that *Konica Business Machines* required the State to disqualify Securus, rather than consider the revised letter. The trial court also rejected ViaPath's argument that the State was obliged to reject the revised letter. The trial court then adopted the tentative ruling, as modified, as the order of the court. This appeal timely followed.

11

## II. DISCUSSION

On appeal from the order denying the motion for preliminary injunction, ViaPath argues the trial court abused its discretion in finding it was unlikely to prevail on the merits because: (1) the trial court applied the wrong degree of scrutiny to the bond letter issue; (2) the trial court erred in excluding the press release; (3) the contract award to Securus was illegal because Securus failed to satisfy the productive use requirement; (4) the contract award to Securus was illegal because the initial letter failed to satisfy the bond letter requirement; (5) the contract award to Securus was illegal because the revised letter also failed to satisfy the bond letter requirement; (6) the State should have done more to evaluate whether Securus satisfied the productive use requirement; and (7) the State abused its discretion in determining that Securus was a responsible bidder. ViaPath also argues the trial court abused its discretion in concluding the balance of harms favored denial of the injunction.

For ease of analysis, we will consider most of these arguments thematically, rather than the order suggested by the briefs. We will begin with ViaPath's various arguments that the trial court erred in evaluating the merits of its claims based on the bond letter requirement. We will then consider ViaPath's arguments that the trial court erred in excluding the press release and evaluating the merits of its claims based on the productive use requirement. Finally, we will consider ViaPath's argument that the trial court abused its discretion in concluding the balance of harms favored denial of the injunction. None of these arguments have merit, as we discuss below.

### A. *Applicable Legal Principles and Standards of Review*

Section 6611 authorizes aggrieved bidders to challenge an unsuccessful negotiation by way of a petition for writ of mandate pursuant to Code of Civil Procedure section 1085. (§ 6611, subd. (d).) "The writ of mandate, codified in Code of Civil Procedure section 1085, 'is the traditional remedy for the failure of a public official to

12

perform a legal duty.' " (*Alameda Health System v. Alameda County Employees' Retirement Assn.* (2024) 100 Cal.App.5th 1159, 1176 (*Alameda Health System*).)

To obtain writ relief under Code of Civil Procedure section 1085, the petitioner must show " ' "(1) a clear, present and usually ministerial duty on the part of the respondent … ; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty." ' " (*Bull Field, LLC v. Merced Irrigation Dist.* (2022) 85 Cal.App.5th 442, 451 (*Bull Field*).) "A writ may issue to correct an agency's abuse of discretion 'whether the action being compelled or corrected can itself be characterized as "ministerial" or "legislative." ' [Citation.] However, in either case, mandamus may issue only to compel the performance of an act 'which the law specifically enjoins.' [Citations.] Thus, mandamus 'will not lie to control discretion within the area lawfully entrusted to the administrative agency.' " (*Id.* at p. 452.)

" 'In deciding whether to issue a preliminary injunction, a trial court must evaluate two interrelated factors: (i) the likelihood that the party seeking the injunction will ultimately prevail on the merits of his claim, and (ii) the balance of harm presented, i.e., the comparative consequences of the issuance and nonissuance of the injunction.' " (*American Medical Response of Inland Empire v. County of San Bernardino* (2025) 117 Cal.App.5th 856, 873 (*American Medical Response*).)

" ' "The law is well settled that the decision to grant a preliminary injunction rests in the sound discretion of the trial court." [Citation.] "A trial court will be found to have abused its discretion only when it has ' "exceeded the bounds of reason or contravened the uncontradicted evidence." ' " [Citation.] "Further, the burden rests with the party challenging the [trial court's ruling on the application for an] injunction to make a clear showing of an abuse of discretion." ' " (*American Medical Response, supra*, 117 Cal.App.5th at p. 873.)

"Our review of a preliminary injunction 'may trigger any or all of the three standards of appellate review.' [Citation.] The trial court's evaluation and weighing of

13

the parties' likelihood of success on the merits and the balance of harm is reviewed for abuse of discretion. [Citation.] We review de novo the trial court's application of legal principles and we review its findings of fact under the substantial evidence standard." (*Anderson v. County of Santa Barbara* (2023) 94 Cal.App.5th 554, 568 (*Anderson*).)

## B. The Bond Letter Requirement

ViaPath argues the trial court abused its discretion in finding ViaPath was unlikely to succeed on the merits of its claims concerning the bond letter requirement. Specifically, ViaPath argues: (1) the trial court confused the concepts of bidder responsibility and bid responsiveness, and consequently applied the wrong level of scrutiny to the bond letter issue; (2) the contract award to Securus was illegal because the initial letter failed to comply with the bond letter requirement and Securus should not have been allowed to submit the revised letter; and (3) the contract award to Securus was illegal because the revised letter also failed to satisfy the bond letter requirement. We address these arguments in turn.

### 1. Whether the Trial Court Applied the Wrong Standard of Judicial Scrutiny

ViaPath argues the trial court confused the concepts of bidder responsibility and bid responsiveness and consequently applied the wrong standard of judicial scrutiny to the bond letter issue. ViaPath's argument is disingenuous.

As previously discussed, the petition alleged Securus "was teetering on the brink of bankruptcy" and thus unable to satisfy administrative requirements designed to demonstrate financial stability. The application similarly argued (in a bold-face heading) that "**Securus is not a responsible offeror because it failed to meet the mandatory Letter of Bondability and Financial Responsibility requirements.**" The supplemental memorandum incorporated the same argument without qualification. ViaPath's pleadings and opening papers thus framed the bond letter issue as one of bidder responsibility, rather than bid responsiveness. (See § 1103 [defining " '[r]esponsible bidder' " to mean "a bidder who has demonstrated the attribute of trustworthiness, as well

14

as quality, fitness, capacity, and experience to satisfactorily perform the public works contract"]; see also *Great West Contractors, Inc. v. Irvine Unified School District* (2010) 187 Cal.App.4th 1425, 1451 (*Great West*) ["Readers of Public Contract Code section 1103 will note that it is focused on the *bidder*, not the bid"].)

ViaPath did not clearly articulate its current theory—that Securus's bid was nonresponsive for failing to comply with the bond letter requirement—until the reply brief in support of the motion for preliminary injunction. It is not persuasive for ViaPath to say the trial court abused its discretion in failing to consider its untimely argument, as the court need not have considered it at all. (*Schram Construction, Inc. v. Regents of University of California* (2010) 187 Cal.App.4th 1040, 1052, fn. 7 (*Schram*); see also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2022) ¶ 9:106.1 ["It is a serious mistake to leave key arguments for the reply brief . . . [because] [t]he trial court is likely to *refuse to consider new evidence or arguments first raised in reply papers*"].) Regardless, ViaPath fails to establish error.

Judicial review of an administrative action or decision pursuant to a petition for writ of mandate is limited to determining whether the public entity's actions were " 'arbitrary, capricious, entirely lacking in evidentiary support, or inconsistent with proper procedure.' " (*Schram, supra*, 187 Cal.App.4th at p. 1051.) We exercise our independent judgment when determining whether the public entity's actions were contrary to the procedures provided by law (*id.* at p. 1052), but in doing so, we must consider the amount of leeway the agency has in the first instance.

"The amount of leeway a public entity has in awarding a contract is governed by the statutory or municipal law framework applying to that contract." (*Great West, supra*, 187 Cal.App.4th at p. 1447.) "Thus, where a statute requires a public entity to award a contract to the lowest responsible bidder, the courts have been vigilant in not excusing attempts by public entities to circumvent that requirement." (*Id.* at p. 1448.) "Cases where the governing statute requires the public entity to award a contract to the lowest

15

responsible bidder even if it means bypassing a 'superior' bidder emphasize the public interest in guarding against 'Tammany-style' favoritism and corruption." (*Id.* at p. 1449 [collecting cases].) In such cases, the award is subject to "close judicial scrutiny and contracts awarded without strict compliance with bidding requirements will be set aside." (*Konica Business Machines, supra*, 206 Cal.App.3d at p. 456.)

*Konica Business Machines* and *Eel River Disposal & Resource Recovery, Inc. v. County of Humboldt* (2013) 221 Cal.App.4th 209 (*Eel River*), on which ViaPath relies, are examples of this type of case, where the governing statute or municipal law required that the contract be awarded to the lowest responsible bidder. (See *Konica Business Machines, supra*, 206 Cal.App.3d at pp. 456, 453-454 [applying "close judicial scrutiny" where the applicable statute required the public entity to award the contract " 'to the lowest responsible bidder *meeting specifications*, or else reject all bids' "]; and see *Eel River, supra*, at pp. 215, 236-237 [applying " 'close judicial scrutiny' " where applicable state statutes and county ordinance contemplated "competitive bidding," which encompassed an implied requirement that the contract be awarded to the "lowest responsible bidder"].) But these are not the only models for competitive bidding on a public works contract.

Other cases apply more deferential scrutiny where the governing statute or municipal law authorizes the public entity to consider factors other than cost. (See, e.g., *Mike Moore's 24-Hour Towing v. City of San Diego* (1996) 45 Cal.App.4th 1294, 1306-1307 [applying deferential standard where municipal code authorized the public entity to award the contract to " 'the proposal best meeting City requirements' "]; see also *Weinstein v. County of Los Angeles* (2015) 237 Cal.App.4th 944, 966 [applying "more deferential" standard where statute exempted personal services contracts from competitive bidding and allowed county to choose contractor with necessary technical skill"].) These cases proceed from the premise that, "[a] public entity's 'award of a contract, and all of the acts leading up to the award, are legislative in character.' " (*Mike*

16

*Moore's, supra*, at p. 1303; *Weinstein, supra*, at 964; see *Bull Field, supra*, 85 Cal.App.5th at p. 458 ["numerous courts have recognized that public agency's decision concerning the award of a contract is a legislative or quasi-legislative act"].) They emphasize that the " 'letting of contracts by a governmental entity necessarily requires an exercise of discretion guided by considerations of the public welfare.' " (*Mike Moore's, supra*, at p. 1303; see *Great West, supra*, 187 Cal.App.4th at p. 1449 [ "at least some of the cases involving governing legislative schemes that allow for discretion in public contracting often emphasize just that – discretion"].) Courts in such cases " 'will tend to defer to the presumed expertise of the agency acting within its scope of authority.' " (*Mike Moore's, supra*, at p. 1306; *Weinstein, supra*, at p. 966.)[3]

ViaPath insists the trial court should have applied "close judicial scrutiny" to the question whether Securus's bid was responsive, giving no deference to the State's determination that the revised letter satisfied the RFP's "primary criteria." But ViaPath makes no attempt to connect the level of scrutiny now sought to the relevant statutory framework. ViaPath does not suggest section 6611 requires close judicial scrutiny. It does not analyze section 6611 or analogize it to the competitive bidding statutes in *Konica Business Machines* or *Eel River*. Neither does ViaPath make any attempt to locate in section 6611 the basis for an alleged mandatory duty to disqualify bidders at the first sign of noncompliance with the RFP. Indeed, ViaPath's discussion of judicial scrutiny does not mention section 6611 at all.

---

[3] Courts are particularly likely to defer to the public entity's discretion in awarding service contracts. (*Great West, supra*, 187 Cal.App.4th at p. 1449, fn. 20 ["Courts considering public contracts for services have recognized that services tend to be more individuated than construction and have accordingly allowed the public entity more room to accept something less than the best monetary bid, i.e., to use their own judgment in determining the best bid, not necessarily the most profitable"].)

Having failed to meaningfully discuss section 6611, ViaPath also fails to show the State exceeded the leeway afforded by the statute. Under the circumstances, we cannot say the trial court abused its discretion in finding ViaPath was unlikely to prevail on its newly articulated theory of bid responsiveness, even assuming that theory had been properly presented (which it was not). We therefore reject the claim of error.

2. *Whether the Trial Court Abused its Discretion in Finding ViaPath Was Unlikely to Prevail on the Merits of its Claim that the State Acted Illegally in Allowing Securus to Submit the Revised Letter*

ViaPath argues the State acted illegally in awarding the contract to Securus because the initial letter failed to comply with section 3.18 of the RFP and the State should not have given Securus an opportunity to submit the revised letter. No party argues the initial letter satisfied the bond letter requirement. We can therefore focus on whether the trial court abused its discretion in concluding ViaPath was unlikely to prevail on the merits of its claim that the State acted illegally in allowing Securus to submit the revised letter. Here again, no abuse of discretion appears.

" 'A basic rule of competitive bidding is that bids must conform to specifications, and that if a bid does not so conform, it may not be accepted. [Citations.] However, it is further well established that a bid which substantially conforms to a call for bids may, though it is not strictly responsive, be accepted if the variance cannot have affected the amount of the bid or given a bidder an advantage or benefit not allowed other bidders or, in other words, if the variance is inconsequential.' " (*Ghilotti Construction Co. v. City of Richmond* (1996) 45 Cal.App.4th 897, 904 (*Ghilotti*).)

ViaPath argues Securus should have been disqualified upon submission of the initial letter. But the RFP does not call for "sudden death" in the event of an initial failure to comply. Rather, the RFP mirrors section 6611 in providing for an iterative negotiation process. (See generally § 6611, subd. (a) [authorizing use of negotiation process where, inter alia, the business need or purpose of the procurement can be further

18

defined through such a process, different types of solutions might be identified through the process, or the complexity of the purpose or need suggests the bidder's costs to prepare and develop a response will be extremely high].)

To that end, section 7.2.3 of the RFP provides: "During the proposal evaluation, the State may request that the Bidder clarify any area of the proposal that the State determines to be unclear. The State may also request clarification for areas that may render the proposal non-compliant and/or non-responsive to the requirements and provide Bidders the opportunity to resubmit compliant responses by the date and time specified by the State." The trial court relied on the above-quoted language to conclude "the RFP's requirements expressly contemplated that bidders could be allowed the opportunity to correct defects in their initial proposals," and implicitly found the State acted within the scope of its discretion in accepting the revised letter. ViaPath does not directly challenge either of these determinations, and with good reason, considering ViaPath also failed at first to comply with the bond letter requirement.

ViaPath tries to sidestep this fact by arguing the problems with Securus's initial letter were material, while the problems with ViaPath's were not. Building on this idea, ViaPath suggests Securus received an unfair competitive advantage because, in accepting revised letters from both bidders, the State allowed Securus to address material defects in its bid package, while ViaPath merely corrected an immaterial omission.[4] ViaPath goes on to speculate that other potential bidders may have been discouraged from bidding at all, as the bond letter requirement was hard to satisfy, and they may have thought they had only one chance to get it right. These arguments fail for any number of reasons.

---

[4] As mentioned, ViaPath's initial letter failed to specify that the performance bond would be executed within 21 calendar days of the contract award, as required by section 3.18 of the RFP.

For one thing, the State could have reasonably believed both bond letters were materially defective. That ViaPath may have satisfied more of the bond letter requirements than Securus does not mean its failure to specify the time for execution of the performance bond was immaterial. For another thing, the RFP does not say the State can only seek clarification or correction of immaterial defects. To the contrary, the RFP authorized the State to request clarification of any "areas that may render the proposal non-compliant and/or non-responsive," which would necessarily include material ones. As Securus observes, the negotiation process would be an empty exercise if bidders were not allowed to make material alterations to their initial proposals.

Having received two defective bond letters, the State could reasonably decide to give both bidders another chance. ViaPath may have come closer to meeting the bond letter requirements than Securus, but both fell short in their first attempt, and both received the same opportunity to try again. We cannot say the State acted unreasonably, or gave Securus an unfair advantage, because one noncompliant letter may have required more revision than the other. Nor can we say the decision to allow revised letters would have been likely to mislead or disadvantage other potential bidders. The RFP makes no secret of the State's right to request clarifications of nonresponsive or noncompliant bids. Potential bidders could not have been confused about the State's right to give bidders another bite at the apple, when that right was expressly reserved in the RFP.

The trial court could have reasonably determined that ViaPath was unlikely to prevail on the merits of its claim that the State acted illegally in providing Securus an opportunity to submit the revised bid for any or all of these reasons. We therefore see no abuse of discretion.

20

3.      *Whether the Trial Court Abused its Discretion in Finding ViaPath Was Unlikely to Prevail on the Merits of its Claim that the State Acted Illegally in Awarding the Contract to Securus, Given the Revised Letter's Use of Conditional Language*

ViaPath next argues the State acted illegally in awarding the contract to Securus, given the alleged noncompliance of the revised letter. Specifically, ViaPath argues the revised letter was still conditional, and therefore still failed to comply with section 3.18 of the RFP. In ViaPath's estimation, the revised letter's use of conditional language was "another material deviation from the RFP requirements," which should have disqualified Securus from the procurement. ViaPath again fails to show any abuse of discretion.

The evidence before the trial court established that both bidders initially submitted noncompliant bond letters, both were sent requests for clarification, and both submitted revised letters, in which both their respective sureties said they would provide performance bonds on an annually-renewing basis. The evidence also established that the State determined both revised letters complied with "the primary criteria required in section 3.18 of the RFP: the surety's guarantee of a bond of $25,000,000 to be executed within 21 days of the contract award, and a Letter of Bondability valid for 12 months from the date of issuance."[5]

ViaPath challenges the State's determination that the revised letter satisfied the RFP's "primary criteria," arguing its use of the words "subject to agreed upon underwriting conditions being met" rendered the letter impermissibly conditional.[6] The parties advance differing interpretations of these words, but we need not divine their meaning or decide whether they modified Nationwide's agreement to provide the

---

[5] As noted, the evidence also established that Securus provided the required bond.

[6] Again, the revised letter said: "Nationwide agrees to provide a performance bond in the amount of $25 million within 21 days of the contract award to the California Department of Corrections and Rehabilitation related to RFP C5611826 using the annual renewable bond form accepted in RFP C5611826 Question and Answer (Q&A) Set #2, subject to agreed upon underwriting conditions being met."

21

performance bond (as ViaPath contends) or the process for annual renewal of the bond (as Securus and the State contend). The trial court found the State could have reasonably understood the words to mean that the process for annual renewal would be " 'subject to agreed upon underwriting conditions being met,' " and ViaPath does not seriously argue otherwise.

But even assuming the revised letter could not be so understood, we would find no abuse of discretion. As previously discussed, a public entity may accept a bid that, while not strictly responsive, " 'substantially conforms to a call for bids' " so long as the variance " 'cannot have affected the amount of the bid or given a bidder an advantage or benefit not allowed other bidders or, in other words, if the variance is inconsequential.' " (*Ghilotti, supra*, 45 Cal.App.4th at p. 904; see also *Bay Cities Paving & Grading, Inc. v. City of San Leandro* (2014) 223 Cal.App.4th 1181, 1188 ["the rule that requires ' "strict compliance with bidding requirements does not preclude the contracting entity from waiving inconsequential deviations" ' " ].) "These considerations must be evaluated from a practical rather than a hypothetical standpoint, with reference to the factual circumstances of the case." (*Ghilotti, supra*, at p. 908.) " 'Whether in any given case a bid varies substantially or only inconsequentially from the call for bids is a question of fact.' " (*Id.* at p. 906.)

On the record before us, the trial court could have found the revised letter substantially conformed to the RFP's requirements (i.e., satisfied its "primary criteria"), and any deviation from the requirement that the surety's offer be unconditional was inconsequential. (*Ghilotti, supra*, 45 Cal.App.4th at p. 904.) ViaPath presented no evidence suggesting the use of conditional language affected the amount of the bid or

gave Securus an advantage not given to other bidders. (*Ibid.*) To the contrary, the evidence showed ViaPath's letter also used conditional language.[7]

Furthermore, it is undisputed that Securus provided the required performance bond. From a practical standpoint, the trial court could have reasonably concluded that the bond letter requirement was intended to give the State adequate assurance that the required bond would issue, and any deviation in the language used to provide that assurance was inconsequential, given that the condition was ultimately satisfied. Under the circumstances, we cannot say the trial court abused its discretion in concluding ViaPath was unlikely to prevail on its claim that the State acted illegally in awarding the contract to Securus given the revised letter's use of conditional language.

C.      *The Productive Use Requirement*

ViaPath raises two arguments regarding the productive use requirement. First, ViaPath argues the trial court erred in excluding the press release. Second, ViaPath argues the trial court abused its discretion in finding ViaPath was unlikely to prevail on the merits of its claim that the State acted illegally in awarding the contract to Securus, given its alleged failure to comply with the productive use requirement (as purportedly shown by the press release). Neither argument succeeds.

1.      *Whether the Trial Court Erred in Excluding the Press Release*

As discussed, ViaPath attached the press release as an exhibit to the petition and alleged the State was required to disqualify Securus, as the press release supposedly showed that Securus's EVOTAB tablet was not a proven product within the meaning of section 3.20 of the RFP. The State objected to the press release, relying on *Cypress Security* for the rule that judicial review in a mandamus action is limited to " 'an examination of the proceedings before the agency to determine whether its findings and

_____

[7] ViaPath's revised letter said that its surety would "consider typical single bond requests in the amount of $25 million and with an aggregate backlog totaling $50 million."

actions are supported by substantial evidence.' " (Quoting *Cypress Security, supra*, 184 Cal.App.4th at p. 1010.) The trial court sustained the objection, relying on *Western States* for the related rule that "extra-record evidence is not permitted in a traditional mandate action except in very limited circumstances." ViaPath now argues the trial court misunderstood *Western States* and erred in failing to sua sponte recognize that some such limited circumstances could theoretically be present here. ViaPath's argument is not well taken.

" 'An unbroken line of cases holds that, in traditional mandamus actions challenging quasi-legislative administrative decisions, evidence outside the administrative record (extra-record evidence) is not admissible.' " (*San Joaquin County Local Agency Formation Com. v. Superior Court* (2008) 162 Cal.App.4th 159, 167 (*San Joaquin Local*), quoting *Carrancho v. California Air Resources Board* (2003) 111 Cal.App.4th 1255, 1269; see also *Western States, supra*, 9 Cal.4th at p. 574 ["It is well settled that extra-record evidence is generally not admissible in non-CEQA traditional mandamus actions challenging quasi-legislative administrative decisions"].) " 'This rule is consistent with substantial evidence review generally, and ensures that courts appropriately defer to the agency's expertise and its role as part of the separate and coequal executive branch.' " (*Alameda Health System, supra*, 100 Cal.App.5th at p. 1185; see also *San Joaquin Local, supra*, at p. 167 ["Limiting review to the administrative record is appropriate due to the scope of review"].) As a corollary, "extra-record evidence can never be admitted merely to contradict the evidence the administrative agency relied on in making a quasi-legislative decision or to raise a question regarding the wisdom of that decision." (*Western States, supra*, at p. 579.)

ViaPath argues the general rule excluding extra-record evidence in traditional mandamus actions should not apply to government contract cases. This is so, says ViaPath, because government procurement cases require "close judicial scrutiny" of contract awards, and "the court's willingness to permit extra-record evidence is inversely

24

proportional to the level of deference afforded on judicial review."[8] This argument was not raised in the trial court, and we need not consider it. (See, e.g., *People v. Frye* (1985) 166 Cal.App.3d 941, 950 [appellant "cannot urge, on appeal, grounds of admissibility which were not presented to the trial court"].) But even assuming the argument was properly before us, we would reject it. As we have discussed, courts afford varying degrees of deference to public entities in government contract cases, depending on the statutory or municipal law framework applicable to the contract. (*Great West, supra*, 187 Cal.App.4th at p. 1447.) Consequently, there is no one-size-fits all approach to judicial scrutiny in government contract cases, and no basis for creating an across-the-board exception to the rule against extra-record evidence. Furthermore, even if there were reasons for admitting extra-record evidence in government contract cases requiring close judicial scrutiny, ViaPath has failed to show that this is such a case.

ViaPath also argues the press release should have been admitted pursuant to one of two exceptions to the rule against the admission of extra-record evidence described in *Western States*. First, ViaPath argues the press release should have been admitted pursuant to an exception for extra-record evidence "in traditional mandamus actions challenging ministerial or informal administrative actions if the facts are in dispute." (*Western States, supra*, 9 Cal.4th at p. 576.) Second, ViaPath argues the press release should have been admitted pursuant to an exception available in those "rare instances in which (1) the evidence in question existed *before* the agency made its decision, and (2) it was not possible in the exercise of reasonable diligence to present this evidence to the agency *before* the decision was made so that it could be considered and included in the administrative record." (*Id.* at p. 578.) Neither of these arguments were raised in the trial court. As such, we need not consider them. (*People v. Frye, supra*, 166 Cal.App.3d at p.

_____

[8] ViaPath cites *Western States* for this proposition, but *Western States* says no such thing.

950; cf. *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 282-283 [to preserve a claim that evidence was admissible under a hearsay exception, "the proponent has to have alerted the trial court to the exception relied upon and borne the burden below of laying the proper foundation"].)

Regardless, we are not convinced either exception applies. ViaPath's reliance on the exception for ministerial or informal administrative actions depends on the idea that the State had mandatory or ministerial duties so far as the RFP was concerned, but ViaPath fails to locate any such duties in the applicable statutory framework, as we have shown. ViaPath's reliance on the exception for extra-record evidence that existed before the agency's decision and could not have been presented before the decision fails for lack of foundation. As mentioned, ViaPath responded to the State's objection with the naked observation that, "the press release was publicly available to [the State] during the procurement process." That observation does not establish that the press release could not have been presented to the State earlier in the exercise of reasonable diligence. And even assuming the exception applied, admitting the press release would have been inconsistent with the high court's instruction that "extra-record evidence can never be admitted merely to contradict the evidence the administrative agency relied on in making a quasi-legislative decision or to raise a question regarding the wisdom of that decision." (*Western States, supra*, 9 Cal.4th at p. 579.)[9] We therefore reject ViaPath's argument that the trial court erred in excluding the press release.

---

[9] ViaPath argues *Western States*' prohibition on the use of extra-record evidence to contradict the evidence relied upon by the agency is inapplicable, because the State did not rely on any evidence at all to conclude Securus satisfied the productive use requirement. ViaPath is wrong. The State relied on Securus's response to the RFP, which included an affirmation that Securus understood and agreed to comply with the productive use requirement. ViaPath suggests the affirmation could well be false, but that suggestion also appears to be based on the press release. Regardless, the affirmation was evidence, whatever ViaPath may think of it.

26

2.	*Whether the Trial Court Abused its Discretion in Finding ViaPath was Unlikely to Prevail on the Merits of its Claims Based on Securus's Alleged Noncompliance with the Productive Use Requirement*

ViaPath asserts additional arguments based on the productive use requirement. First, ViaPath argues the trial court abused its discretion in finding ViaPath was unlikely to prevail on the merits of its claim that the State acted illegally in awarding the contract to Securus, given Securus's alleged failure to comply with the productive use requirement. That claim was concededly based on the press release, which was properly excluded. In the absence of the press release, there was nothing supporting the claim that Securus failed to comply with the productive use requirement, and the trial court appropriately concluded ViaPath was unlikely to succeed on the merits.[10]

Second, ViaPath argues the trial court erred in finding it was unlikely to prevail on the merits of its claim that the State abused its discretion in failing to independently evaluate whether Securus complied with the productive use requirement. However, ViaPath acknowledges that nothing in the RFP or statutory framework required the State to undertake such an evaluation. Once again, no abuse of discretion appears.

D.	*Responsible Bidder*

ViaPath next argues the trial court abused its discretion in finding ViaPath was unlikely to prevail on the merits of its claim that Securus was not a responsible bidder. ViaPath says Securus was facing financial difficulties and failed or refused to provide the State with copies of its most recent financial statements. Instead, ViaPath says the State unreasonably relied on outdated financial statements, the allegedly noncompliant revised

---

[10] ViaPath argues Securus failed to present sufficient evidence to the trial court that it complied with the productive use requirement. But it was ViaPath's burden to present evidencing showing a likelihood of success on the merits, not Securus's. (*O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1481.)

27

letter, and a $25 million contract to provide electronic monitoring services to the State. ViaPath's objections to the State's responsibility determination, and to the trial court's finding of an insufficient likelihood of success on the merits, are invitations to reweigh the evidence, which we cannot do. We therefore reject the claim of error.

## E.     *Balance of Harms*

Finally, ViaPath argues the trial court erred in assessing the balance of harms. We are again unpersuaded. " 'A trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim.' " (*Anderson, supra*, 94 Cal.App.5th at p. 570; see also *Midway Venture LLC v. County of San Diego* (2021) 60 Cal.App.5th 58, 91 [" ' "Where there is … no likelihood that the plaintiff will prevail, an inunction favoring the plaintiff serves no valid purpose and can only *cause* needless harm" ' "].) Furthermore, where, as here, "the defendants are public agencies and the plaintiff seeks to restrain them in the performance of their duties, public policy considerations also come into play. There is a general rule against enjoining public officers or agencies from performing their duties. [Citations.] This rule would not preclude a court from enjoining unconstitutional or void acts, but to support a request for such relief the plaintiff must make a significant showing of irreparable injury." (*Tahoe Keys Property Owners' Assn. v. State Water Resources Control Bd.* (1994) 23 Cal.App.4th 1459, 1471.) Given our conclusion that ViaPath failed to show a likelihood of prevailing on the merits of its claims and the general rule against enjoining public agencies, ViaPath has also failed to show that the risk of injury supports the imposition of a preliminary injunction.

## III.  DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


      /S/
      RENNER, Acting P. J.

We concur:



/S/
MESIWALA, J.



/S/
DUARTE, J.*

---

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.